GEORGE A. FERGUSON *vs.* MARY D. NEILSON.

To an action brought by A. against B., a widow, to recover compensation for injury caused by the alleged negligence of B.'s servant, B. pleaded coverture at the time of the alleged negligence. It appeared that B. was, when the injury occurred, a married woman, residing in Newport, R. I., maintaining her own establishment from her own income and living apart from her husband, who resided in New York and had never been domiciled in Rhode Island. The servant was hired by B., and at the time of the alleged negligence was under her direction.

*Held,* that the action could not be maintained. B. under coverture was incapable of contracting, and a contract of hiring was necessary to affect her with the servant's tort. The servant was in law the servant of the husband, not of B.

TRESPASS ON THE CASE. On demurrer to the replication. *Providence, July* 5, 1890. STINESS, J. The plaintiff brings this

action to recover damages for the negligence of the defendant's servant in driving.    The defendant, now a widow, pleads coverture at the time of the alleged negligence : to which the plaintiff replies that at said time the defendant was living separate and apart from her husband, who was then a resident of New York and never a domiciled inhabitant of Newport ; that the defendant maintained herself separately in Newport, hiring her own servants and paying them from her own income, including the servant whose negligence is complained of ; and that such servant was under her direction and control.    To this replication the defendant demurs.    The replication does not set out facts to bring the case within Pub. Stat. R. I. cap. 165 ; and therefore the question is, simply, whether a married woman is liable for the negligence of a servant employed by her apart from her husband.    At common law a married woman is incapable of making a contract, and consequently incapable of holding the relation of master to servant.    If she hired domestic servants or others whose service the husband accepted, it was held she did so as her husband's agent and on his behalf. They were his servants and not hers, and he alone was responsible to and for them.    But the plaintiff contends that as a married woman is liable jointly with her husband during coverture, and solely after his death, for her own torts, this action can be maintained against the defendant, and that her liability under a contract of hiring is not the test of his right to sue.

That a married woman is liable for her torts, as claimed by the plaintiff, is a general rule, which has been recognized by this court in *Curry* v. *Allen*, 14 R. I. 343.    But whether this rule embraces negligence, we need not now decide, since this case, as presented, does not involve the negligence of the defendant, but only that of a servant, while she was a *feme covert*.    If she is liable at all, her liability must rest upon the same ground as that of any master or principal for the act of a servant or agent.    The foundation of the rule *respondeat superior* is contract, express or implied, by means of which the servant stands in the place of the master, so that his act is regarded as the master's act.    If, therefore, there is not and cannot be a contract of hiring, there can be no representation of one by the other, and no ground for the application of the rule. There is no substantial difference between holding a married

woman liable directly on a contract, or indirectly for breach of a duty imposed upon her by the contract. Although the plaintiff is not a party to a contract with her, yet when he asserts a relation based upon a contract, as the foundation for a consequent breach of duty, his position is essentially the same as that of one who sets up the same contract, in order to recover directly for its breach. If we should say she is liable for the tort because of the relation, we should say there was a contract which made her liable; for if the driver was her husband's servant, and not hers, of course she is not responsible for him; but if he was her servant, and not the husband's, how could a court, for example, refuse him judgment if he were to sue for wages upon the contract? The same thing is true of married women which was held in regard to infants, in *Jennings* v. *Rundall*, 8 Term Rep. 335, that there is no liability for torts dependent upon a contract. Lord Kenyon said: "If it were in the power of a plaintiff to convert that which arises out of a contract into a tort, there would be an end of that protection which the law affords to infants." We have been somewhat surprised that neither the diligence of counsel, nor our own research, has brought to light any cases like the one before us; and yet the absence of authority, on a case so likely to have occurred before, is perhaps the best authority for the conclusion that a married woman has never been thought to be liable for tort based upon a contract relation. There are cases where a married woman has made false representations in matters of contract; but in these it has been held that an action will lie neither against the husband nor wife. In *Liverpool Adelphi Loan Association* v. *Fairhurst*, 9 Exch. Rep. 442, Pollock, C. B., said: "A *feme covert* is unquestionably incapable of binding herself by a contract; it is altogether void, and no action will lie against her husband or herself for the breach of it. But she is undoubtedly responsible for all torts committed by her during coverture, and the husband must be joined as a defendant. They are liable, therefore, for frauds committed by her on any person, as for any other personal wrongs. But when the fraud is directly connected with the contract with the wife, and is the means of effecting it, and parcel of the same transaction, the wife cannot be responsible and the husband be sued for it together with the wife." See, also, *Keen* v. *Hartmann &*

*wife*, 48 Pa. St. 497 ; *Woodward & Perkins* v. *Barnes & wife*, 46 Vt. 332 ; *Owens* v. *Snodgrass & wife*, 6 Dana, Ky. 229 ; *Card* v. *Dodds*, 6 Bush, Ky. 681. If, then, a married woman is not liable for a positive fraud connected with a contract, much less is there reason to hold her liable for the negligence of a third person for whose acts she can only be answerable under a contract relation.

The incapacity of a wife to enter into a contract on her own behalf arises from the fact of marriage, and does not depend upon the other circumstances under which she may seek to act. In some States the incapacity has been removed or modified by statute, but in this State there has been no change sufficient to cover the claim made in this case. Hence the fact set up by the plaintiff in his replication, that the defendant was living separate from her husband, does not affect the question at issue; since it does not alter her character or condition, nor relieve her from the disability which the law imposes upon married women. *Marshall* v. *Rutton*, 8 Term Rep. 545.

While there are cases which have gone far towards treating a married woman, living apart from her husband, as a *feme sole*, yet such decisions, it will be found, have generally been induced by circumstances which do not appear in this case. Where the husband had been banished, or had abjured the realm and was an alien, or was so situated that he might be treated as civilly dead, the courts in England long ago relaxed the rules to meet apparent necessities, and practically treated the wife as a widow. *Marsh* v. *Hutchinson*, 2 Bos. & Pul. 226. In this country courts have followed the same course, *Gregory* v. *Paul*, 15 Mass. 31, even to the extent, in one case, of holding that where a husband, leaving his family without providing for them, went to another State, it was equivalent to abjuring the realm, and enabled the wife to sue and be sued as a *feme sole*. Other cases have been very liberal with married women in the matter of their capacity to act separate from their husbands, when circumstances seemed to require it, but we need not consider them in this case. The same arguments which are urged in behalf of a wife whose husband lives abroad or in another State apply with almost equal force to one abandoned by her husband while he remains in the same State ; and yet, in the latter case, aside from statutory provisions, no one would claim

that the wife could act alone. In trying to mitigate hardships, courts sometimes illustrate the maxim that extreme cases are the quicksands of the law. But wherever the line of the law may be elsewhere, we think our statutes, relating to married women and their property, go as far as it has been intended to go in the way of removing their disabilities in this State. To adopt the plaintiff's claim in this case would be judicial legislation, engrafting a new provision upon the statute which is substantially an adoption of the principle of the English rule. The same claim was pressed upon the court in *Mason* v. *Jordan*, 13 R. I. 193, in the case of a deed, but it was not allowed there; nor do we think we should allow it here in the case of a contract. The demurrer to the replication must therefore be sustained.

*Francis B. Peckham & Patrick J. Galvin*, for plaintiff.

*Samuel R. Honey*, for defendant.

NOTE. — The above case was heard by Matteson & Stiness, JJ.