**BRAZILE et ux. v. SCOTT, Commissioner of Insurance.   (No. 7365.)**

(Court of Civil Appeals of Texas. San Antonio. May 27, 1925. Rehearing Denied June 13, 1925.)

**Husband and wife ⬤⟳105—Husband not liable for wife's tort directly inducing contract.**

Husband *held* not liable for wife's tort in obtaining loan by forging his name to note and mortgage, since, the contract and tort inducing it being inseparable, liability for tort would evade fact that wife's contract was void under Vernon's Sayles' Ann. Civ. St. 1914, art. 4624.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Suit by M. D. Brazile against the United Home Builders of America, G. G. Wright, its receiver, and John M. Scott, Commissioner of Insurance, for cancellation of a note and mortgage, with cross-action by two defendants last named. Judgment on instructed verdict for plaintiff removing clouds on title and in favor of the commissioner, but adverse to the receiver, and plaintiff and his wife, who was joined as defendant, appeal. Affirmed in part, and reversed in part and rendered.

Ocie Speer, of Fort Worth, and Hamp P. Abney, of Sherman, for appellants.

Dan Moody, of Georgetown, Riley Strickland, of Sugar Land, and Phillips, Trammell & Chizum, of Fort Worth, for appellee.

FLY, C. J. This suit was instituted by M. D. Brazile against the United Home Builders of America, an association or society, its receiver, G. G. Wright, and John M. Scott, commissioner of insurance, for the cancellation of a promissory note and a certain mortgage on a tract or parcel of land situated in Fort Worth, claimed by him to be his homestead. The receiver filed a cross-action, as also did the commissioner of insurance. Mrs. Annie Brazile, wife of M. D. Brazile, was made a defendant in the cause. The court instructed a verdict to remove all clouds from the title to the property of M. D. Brazile, and a verdict in favor of either the commissioner of insurance and banking or the receiver, as against M. D. Brazile and his wife, Annie Brazile, for the money paid by the Home Builders of America to Annie Brazile. The jury left unnamed the party

---

⬤⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to whom the money judgment was to be given but found the amount. Afterwards the court, under an agreement to that effect, decided that the commissioner was entitled to the money and the receiver should not recover for any sum. This appeal was perfected by M. D. Brazile and Annie Brazile. M. D. Brazile, by his attorneys, has filed a brief herein, and the brief is copied verbatim et literatim and signed by Mrs. Annie Brazile, in propria persona, and filed herein. The reason for the separate briefs is not apparent. It in no way aids in the decision of the case.

The facts show that Annie Brazile, the wife of M. D. Brazile, without his knowledge or consent applied for and obtained loans from the United Home Builders of America in the sum of $11,000, and as security for the same executed a mortgage to said society on the S. ½ of the N. W. ¼ of lot No. 2, in D. S. Ross subdivision of block No. 26, of Field Welch addition .to the city of Fort Worth, Tex. She forged the name of her husband, M. D. Brazile, to the note and mortgage or deed of trust. He did not ratify or in any manner approve of her acts in borrowing the money or in executing the note and mortgage.

M. D. Brazile was not liable on the note or the mortgage with the execution and delivery of which he had no connection in any way, and this is conceded by the appellee herein, John M. Scott, and it is sought to fix liability on him for the tort committed by the wife in fraudulently obtaining the money through the forgery of his name to the note and mortgage. The note and mortgage being executed by a married woman were utterly null and void. That proposition is not assailed or brought in question. Article 4624, Vernon's Sayles' Civ. Stats. That article is explicit that—

"Neither the separate property of the husband nor the community property other than the personal earnings of the wife, and the income, rents and revenues from her separate property shall be subject to the payments of debts contracted by the wife, except those contracted for necessaries furnished her or her children; provided, the wife shall never be the joint maker of a note or a surety on any bond or obligation of another without the joinder of her husband with her in making such contract."

Undoubtedly Annie Brazile was guilty of fraud, deceit, and misrepresentation in inducing the Home Builders' Association to enter into a contract whereby she obtained money from it. It was fraudulent for her to present a promissory note with her husband's name signed with her own appended to it, and to do the same criminal. act in connection with the mortgage. Through the fraud, forgery, and misrepresentation she obtained thousands of dollars from the organization and appropriated it to her own use and benefit. She undoubtedly committed a tort in deceiving and defrauding the party from whom she obtained the loan, but it is equally certain that the fraud entered into, induced, and consummated the fraudulent contract. The fraud and deceit was the machinery through which the money was obtained, and obtained on a contract which Annie Brazile, a feme covert, was incapable of making.

Infants and married women in cases of this character have applied to them the same principles of law, and while great differences of judicial opinion have been expressed on the question of whether an infant or married woman is liable in tort for falsely representing himself or herself capable of contracting, still the better opinion in England and America seems to be that he or she is not liable. In the case of Slayton v. Barry, 175 Mass. 513, 56 N. E. 574, 49 L. R. A. 560, 78 Am. St. Rep. 510, it was held:

"The general rule is, of course, that infants are liable for their torts. * * * But the rule is not an unlimited one. It is to be applied with due regard to the other equally well settled rule, that, with certain exceptions, they are not liable on their contracts; and the dominant consideration is not that of liability for their torts, but of protection from their contracts. The true rule seems to us to be as stated in Association v. Fairhurst, 9 Exch. 422, 429, where it was sought to hold a married woman for a fraudulent misrepresentation, namely: If the fraud 'is directly connected with the contract, * * * and is the means of effecting it, and parcel of the same transaction,' then the infant will not be liable in tort."

Undoubtedly in the present case the fraud on which the commissioner relies to fix the liability of the husband· and wife was part and parcel of the contract and directly connected with it. The commissioner nor the receiver can maintain an action without showing a contract, which is invalid and not binding, but they seek to evade the law by making the husband liable for a tort which depends for its existence on the invalid contract. The action on the contract could not stand, and neither can the action on the tort stand. They are inseparable and must stand or fall together. Speaking of the liability of a married woman for her torts, Judge Cooley says:

"But the element of contract is as important here as in the law of infancy. The same reasons which would preclude the indirect redress of the infant's breach of contract, by treating it as a tort, will preclude the like redress in the case of the contract of a married woman." Cooley on Torts, p. 195.

This is not an open question in this state, but the rule as enunciated in Ruling Case Law, vol. 13, pp. 1225–1227, that "a married

woman is not liable for her torts growing out of or connected with a contract which she undertook to make, unless she has capacity to bind herself by contract," has been adopted in this state. Sandoval v. Eagle Pass Lumber Co. (Tex. Civ. App.) 248 S. W. 132. That decision is supported by the English decisions and ,the better considered American decisions, such as those of Massachusetts, Vermont, Pennsylvania, Florida, Tennessee, Missouri, and New Jersey.

Even in the pristine days of the common law when the woman was deemed to be merged by marriage into the husband, and he was held liable for her torts, deceit, and fraud, it was a hard rule; but it has but little reason for existence in these days of the amendment and destruction of marital laws, when the female is not only clamoring for, but fast obtaining, all the rights and liabilities of the male. Under the common law, when a woman married she and her husband became one as to their obligations and their liabilities, and they were "no more twain but one flesh." The twentieth century has outgrown that idea, and the theories of the Scriptures, and of laws or customs founded thereon, have been swept aside by the crusade for equal rights of the sexes, as to politics, in domestic life, and as to rights of property. It is archaic to insist on holding the erstwhile head of the family responsible for the acts of a woman equal to him at the polls, in the race for political preferment, in all the avenues of business and commerce, and force him to respond in damages for her crimes and misdemeanors. The doctrine still exists, but the foundation upon which it rested has been destroyed, and in view of the constant advance of the hordes of the Amazonian forces, should be destroyed by legislation. The divorce court is looked forward to almost from the nuptial altar as a haven for surcease from marital sorrow or disappointment, and the marriage relation is donned and doffed with the ease that the sparse clothing of the modern female is put on and off. There is very little basis in the customs of present-day America for the fiction that a man is liable for the wrongs and torts of a wayward wife. The beautiful theory of man's supremacy as the head of the household and his consequent liability has "gone glimmering through the dream of things that were, a school boy's tale, the wonder of an hour."

The judgment will be affirmed as to decreeing title and possession of the property described in the petition to M. D. Brazile and as against the receiver, but will be reversed in so far as judgment was rendered in favor of John M. Scott, commissioner of insurance and banking, as against M. D. Brazile and Annie Brazile, and judgment here rendered that he take nothing by his suit.

### On Motion for Rehearing.

There is no conflict whatever between the decision in this case and the decision in Whitney Hardware Co. v. McMahan, 111 Tex. 242, 231 S. W. 694. In that case it held, so plainly "that he who runs may read," that a married woman must respond in damages for a tort committed by her personally in connection with her separate estate. The ground of her liability was stated to be her power and authority to contract as to her separate property. The court held:

"The power granted by the statute to Mrs. McMahon to manage and control the store building belonging to her separate estate, and the rents to be derived therefrom, carried with it the incidental and collateral power to make a contract with her tenant to repair the store building and to employ others to make needed repairs. She would be liable for the breach of her contract and for the proximate results of her negligence on the part of those employed by her, without protection from her coverture."

That decision was made in answer to a certified question in regard to the liability of a married woman for damages arising from negligently causing a roof to be removed from a building, her separate property, whereby a rain penetrated the inside of the store and damaged goods, belonging to her tenant. The liability of the husband was not in question, and, if it were, the tort of the wife grew out of a contract she had the power to make and was committed in an attempt to perform the contract. Nothing about the husband being liable for the torts of the wife connected with and growing out of an illegal and invalid contract of the wife was involved in the answer to the question, and any expressions on such a case, if there were any, were purely obiter dictum.

In this case the wife was not contracting in regard to her separate property, but she endeavored to make a contract founded on forgery and perjury and to bind her husband thereby. The difference between the two cases is apparent. The wife was not bound on the contract and the husband was not bound, and the commissioner, John M. Scott, will not be permitted to recover on a tort committed by the wife, being a part and parcel of the invalid contract, and indirectly enforce that illegal contract. If any Texas decision has so held, we have failed to discover it, and would not be controlled by such decision if it existed.

The ruling of this court in Sandoval v. Eagle Pass Lumber Company, 248 S. W. 132, is directly in point, and we adhere to the statement therein:

"But while it is true that the person who is capacitated to contract may commit a tort in connection therewith, the person incapable of making the contract cannot be bound on a tort dependent on the contract. If a married

woman could be held liable for a tort growing out of, and dependent on, a contract which she could not lawfully make, it would amount to making her liable on the illegal contract, and what could not be reached directly would be accomplished indirectly."

This seems to be self-evident, and we have seen no authority that contravenes it. The rule is supported by all respectable American authority. Ruling Case Law, Husband & Wife, vol. 13, pp. 1225-1227; Prentiss v. Paisley, 25 Fla. 927, 7 So. 56, 7 L. R. A. 640; Graham v. Tucker, 56 Fla. 307, 47 So. 563, 19 L. R. A. (N. S.) 531, 131 Am. St. Rep. 124; Ferguson v. Neilson, 17 R. I. 81, 20 A. 229, 9 L. R. A. 155, 33 Am. St. Rep. 855; Rowley v. Shepardson, 83 Vt. 167, 74 A. 1002, 138 Am. St. Rep. 1078. In clear terms Ruling Case Law states the rule:

"A married woman is not liable for her torts growing out of or connected with a contract which she undertook to make, unless she has capacity to bind herself by contract."

The text is supported by ample authority. The motion for rehearing is overruled.